UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**DAVID E. DEWALD, II**                                                    **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 4:13CV-P6-M**

**CAPTAIN McCALLISTER et al.**                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, David E. Dewald, II, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983.

This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v.*

*Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  For the reasons set forth below, the action will be

dismissed.

## I. <u>SUMMARY OF CLAIMS</u>

Plaintiff, who was incarcerated at the Henderson County Detention Center (HCDC) when

he filed his complaint, names as Defendants HCDC Captain McCallister; federal inmate

Kincade; the HCDC; the Federal Bureau of Prisons (BOP); and Southern Health Partners.  In his

original complaint, Plaintiff alleges in his first claim that he suffered wrongful administrative

segregation and denial of access to the phone and his attorney.  He states that when he was

transferred to HCDC he was moved to the sex-offender protective custody pod but then "written

out" of the pod with no reason given and moved to a pod where inmates dress in red jumpsuits.

For about a month he and another inmate wrote "numerous grievances asking Captain

McCallister and the colonel why POD 120 was a maximum security violent sex offender POD."

Plaintiff wanted to know the Department of Corrections's policy that governed the way the pod

was set up, why they wore different colors than the other two sex-offender pods, and why they

were "locked down for most of the day based on the guards preference and the other two PODS

weren't locked down at all" or restricted in their access to a phone or attorney.

Plaintiff's second claim is that he was assaulted by a federal inmate and his right to press charges was denied.  Specifically, he alleges that on July 11, 2012, Captain McCallister combined several pods.  Plaintiff ended up with 10 or 15 inmates in a 10-man pod.  He states that a Spanish inmate said something he could not hear, to which he responded "'watsup?'"  At that point, federal inmate Kincade called him a "'retard,'" to which Plaintiff said that they were all "'retards'" for being in there.  Kincade told Plaintiff that if he did not shut up he "'was gonna kick my ass.'"  Plaintiff said:

> "I don't have to shut up," so Kincade assaulted me 30-50 times. After Kincaid was done assaulting me he threatened to "kill me" that's when I got the attention of Deputy Overtone.  I told her I was assaulted and I wanted to press assault charges on federal inmate Kincaid.  I was taken to visitors holding #104 where Sergent Sharp took pictures and asked me what happened.

Plaintiff's third claim alleges that he received improper medical care.  Specifically, he alleges:

> I was taken to medical where the nurse checked my cuts.  I said I wanted to go to the hospital[.  N]urse said it wasn't that bad.  She checked my injuries.  I had cuts and bruises.  I wasn't seen by medical after that for a check up on my injuries to make sure I was ok.  I also had to have my red jumpsuit washed because I deficated myself when I was assaulted due to my fiber medical problem because of Henderson County Detention Center's food menu has little to no fiber in it and to much flour which gave me bowel problems.  The nurse is from Southern Health Partners.

In his fourth claim, Plaintiff alleges that he was wrongfully isolated.  It appears that the reason for this was that the captain had witnesses who said that Plaintiff threw a punch and was not assaulted.  He states that while he was in isolation he was "punished in different ways" like having a cell with no desk and no bunk, being isolated in the same pod as the inmate who

assaulted him, having a cell with no mirror and not being able to turn off the light, and only being allowed to call his family or attorney on Sundays.

The complaint does not indicate in what capacity he sues Defendants or whether he is a convicted prisoner or a pretrial detainee.  The Court assumes that he is a pretrial detainee because he mentions his public defender.  As relief, he requests monetary damages only.

Plaintiff moves to amend his complaint (DN 7).  **IT IS ORDERED THAT** his motion is **GRANTED.**[1]  He does not attach a proposed amended complaint to that motion but does attach several exhibits.  The first is a grievance in which Plaintiff asks if there is a library, and the response is:  "will take that suggestion into consideration for further review."  Other grievances involve complaints about the temperature and needing razor blades and more toilet paper.  Another grievance wants to know why they do not have latex gloves for cleaning, soap to wash hands, and portable toilet lids.  Other grievances ask where some of his property was and what he should do for his vision.  Another complaint is illegible, and one concerns the amount of food.

A few days after filing his motion to amend, Plaintiff filed a supplement to his complaint (DN 11) which seems to contain the claims he references in his motion to amend.  The confinement issues he lists are as follows:  poor or inadequate recreation; inadequate law library and no legal materials; "daily schedule made for lack of sleep;" only three rolls of toilet paper in a 10-man pod; "freezing" temperatures; "hand soap and latex cleaning gloves" (presumably the lack of them); "lights being turned on" in his pod; food portions and quality; overcrowding; no

---

[1]A plaintiff may amend his pleading once as a matter of course within 21 days of service, and service has not occurred in this case.  *See* Fed. R. Civ. P. 15(a)(1).

3

bunk; "commissary sheets instead of phone order;" and "property stolen no recourse."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A.    *Claims against Defendant McCallister and the HCDC*

Plaintiff does not indicate in which capacity he sues Defendant McCallister. Because Plaintiff references Defendant McCallister in the context of his official position, the claim will be construed as brought against Defendant McCallister in his official capacity. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) (where § 1983 plaintiff fails to affirmatively plead capacity in the complaint, the Court looks to the course of proceedings to

4

determine whether the Sixth Circuit's concern about notice to the defendant has been satisfied).

If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against Defendant McCallister are actually brought against the Henderson County government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The same is true for Plaintiff's claims against the HCDC. HCDC is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Compare Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir.1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it is Henderson County that is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, Henderson County is a "person" for purposes of § 1983. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The Court will therefore construe the claims against HCDC as brought against Henderson County.

When a § 1983 claim is made against a municipality, like Henderson County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse

order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

The Court finds that, with respect to the claims against Henderson County, Plaintiff has

6

sufficiently alleged that a policy or custom was the moving force of those alleged violations. The Court will now turn to the question of whether Plaintiff has alleged any constitutional violation.

    1.    *Claim relating to pod assignment and access to phone and attorney*

With regard to his placement in a particular pod, the law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution. *Montanye v. Haymes,* 427 U.S. 236 (1976); *Beard v. Livesay,* 798 F.2d 874 (6th Cir. 1986).  This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet.  Ky. Rev. Stat. § 197.065; *see also Odom v. Caruso*, No. 2:10-cv-31, 2010 WL 4702360, at *7 (W.D. Mich. Nov. 12, 2010) ("Nor does the transfer of a prisoner from one unit to another within the same prison implicate such a right. ").

With regard to phone restriction, an inmate has no right to unlimited telephone use.  See *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Brown v. Long*, No. 96-5567, 1997 WL 63136, at *1 (6th Cir. Feb. 12, 1997) ("plaintiff [prisoner] has no constitutional right to unlimited access to a telephone, particularly during his confinement in segregation").  And, Plaintiff does not allege that he did not have other means of communicating with his attorney.  The Court finds that Plaintiff has not alleged any constitutional violation with regard to his pod assignment or access to the phone or his attorney.

    2.    *Claim relating to assault and isolation thereafter*

Plaintiff alleges that he was wrongfully isolated and deprived of his attorney while in isolation after the inmate assault.  He alleges that he was "punished in different ways" like

having a cell with no desk and no bunk, being isolated after the alleged assault in the same pod as the inmate who assaulted him, having a cell with no mirror, and not being able to turn off the light.

Restrictions on a pretrial detainee that implicate a liberty interest protected under the Due Process Clause may not "amount to punishment of the detainee." *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Without an expressed intent to punish by prison officials, the question whether an act constitutes punishment turns upon: (1) whether the restriction has a rational alternative purpose; and (2) whether the act appears excessive in relation to that alternative purpose. *Id.* at 538. It appears from the complaint that the isolation was prompted by the determination that Plaintiff had thrown a punch, which the Court finds to be a rational purpose for isolation. Nor do the hardships suffered by Plaintiff in the course of isolation, such as having no desk or mirror, appear to be excessive in relation to the perceived need for isolation.

To the extent that Plaintiff is raising a failure-to-protect claim, a pretrial detainee's Fourteenth Amendment due process claim for failure to protect is analyzed using the same standard as the Eighth Amendment. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Deliberate indifference of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another." *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, in order to support an action under § 1983, a plaintiff must establish something more than a lack of ordinary due care, inadvertence, or error. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Nothing in Plaintiff's complaint indicates that Defendants

8

were aware of a risk to Plaintiff.  The alleged assault appears to have been sparked by a spontaneous event not long after these inmates' pods were combined.  In fact, according to the complaint, Plaintiff did not get the attention of a deputy until after the assault had taken place, at which time he was taken to "visitors holding" where a sergeant took pictures and asked what happened.

With regard to the alleged violation of his right to press charges on the other inmate, it appears from his complaint that this decision was made because the captain determined that Plaintiff was the aggressor.  In any event, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Simply put, Plaintiff cannot force Defendants to criminally prosecute an inmate because private citizens, whether or not they are incarcerated, have no right to compel the state to criminally prosecute another person.  *Id.*  The claims relating to the alleged assault and subsequent isolation will be dismissed.

3.      *Conditions of confinement*

The confinement issues Plaintiff lists are as follows:  poor or inadequate recreation; inadequate law library and no legal materials; "daily schedule made for lack of sleep;" only three rolls of toilet paper in a 10-man pod; "freezing" temperatures; "hand soap and latex cleaning gloves"; "lights being turned on" in his pod; food portions and quality; overcrowding; no bunk; "commissary sheets instead of phone order;" and "property stolen no recourse."  None of these alleged deprivations rise to the level of a constitutional violation.

First, although a total denial of recreational opportunities may violate the Constitution, *Walker v. Mintzes*, 771 F.2d 920, 927-28 (6th Cir. 1985), the Sixth Circuit has not defined a

minimum standard of recreation for adult prisoners. *Rodgers v. Jabe*, 43 F.3d 1082, 1087-88 (6th Cir. 1995). Notably, Plaintiff has neither alleged he was deprived of recreation for any significant time period or that the denial of recreation caused him any physical injury or placed him at substantial risk of serious harm. Because it appears the alleged deprivation is not a total deprivation and there is no claim Plaintiff suffered any injury from the alleged inadequate recreation, no cognizable § 1983 claim has been stated.

The courts have recognized repeatedly that there is no constitutionally protected right of access to a law library. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Overcrowding in a prison is not itself a violation of the constitution, *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981), nor is requiring prisoners to sleep on the floor. *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Eddings v. Herrington*, 4:05CV-P138-M, 2005 WL 3134045, at *5 (W.D. Ky. Nov. 23, 2005).

With regard to the "freezing" temperatures, "constitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmates' health." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982). The Court notes that Plaintiff does not claim that he was deprived of sufficient clothing or blankets to remain warm and that it does not appear that Plaintiff has any basis for his assertion regarding the temperature other than the fact that he felt cold. *See Payette v. Trierweiler*, No. 2:10-cv-8, 2010 WL 3937158, at *7 (W.D. Mich. Oct. 4, 2010) (concluding that prisoner's claim regarding cold cell temperature did not state a constitutional violation where prisoner did not allege that he was deprived of clothing to stay warm and had no basis for his assertion as to the cell temperature except that he felt cold).

With regard to food portions and quality, elsewhere in the complaint, Plaintiff states that he suffered from "severe constipation" and that from about June 18, 2012, to September 4, 2012, he had trouble adjusting to what he was being fed and he lost seven pounds.  Constipation and indigestion have been found by numerous courts to not constitute a medical need that is sufficiently serious enough to warrant Eighth Amendment protection.  *Moy v. Evans*, No. 06-272-GPM, 2007 WL 315088, at *2 (S.D. Ill. Jan. 31, 2007) (finding that the plaintiff failed to demonstrate that he had a serious medical need when his only complaints were of constipation and accompanying pain); *Webb v. McKnight*, No. 7:06CV00734, 2006 WL 3761382, at *2 (W.D. Va. Dec. 20, 2006) (finding that the injuries alleged by the plaintiff, which included constipation and indigestion, were not sufficiently serious to rise to the level of an Eighth Amendment violation); *Ross v. McGinnis*, No. 00-CV-0275E(SR), 2004 WL 1125177 (W.D.N.Y. Mar. 29, 2004) (finding that plaintiff's complaints, which included constipation, did not constitute a serious medical need).  Nor has Plaintiff shown that he was substantially deprived of food or shown the type of significant weight loss which is an indicia of inadequate nutrition.  *Cf. Ward v. Gooch*, 2010 WL 4608292, at *7 (E.D. Ky.  Nov. 5, 2010) (evidence that inmate lost 68 pounds over 10 month period and received 200-700 calories a day for almost a year was sufficient to raise genuine issue of material fact); *see Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006) (concluding that, without evidence of serious harm, a 45-pound weight loss not a constitutional claim).

With regard to his lost property, Plaintiff alleges, "I had a watch and legal folder from Henderson that Deputy West gave to a blonde hair property lady on transport [.]  I never got my property back."  A prisoner claiming an unauthorized, intentional deprivation of property in

11

violation of the Due Process Clause must show that state post-deprivation remedies are inadequate. *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Kentucky has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants. *See Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985). Consequently, Plaintiff's claims related to his lost property must be dismissed.

Finally, Plaintiff's allegations of "daily schedule made for lack of sleep;" "hand soap and latex cleaning gloves;" "lights being turned on;" and "commissary sheets instead of phone order" are too overbroad and general to state a claim of unconstitutional conditions of confinement. Some factual basis for claims must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The Court is not required to accept conclusory and unsupported statements. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Consequently, these claims will be dismissed for failure to state a claim upon which relief may be granted. *See id.* at 511-12.

**B.      *Claim against inmate Kincade***

Plaintiff's claim against Defendant Kincade, a fellow inmate, is meritless. To maintain an action under § 1983, Plaintiff must establish that he was: 1) deprived of a right secured by the Federal Constitution or laws of the United States, 2) by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Plaintiff has not alleged that Defendant Kincade was operating as a state actor at the time of the assault, and nothing in the complaint would support such a finding.

12

C.    *Claim against BOP*

The Bureau of Prisons is a federal agency.  The Supreme Court's decision in *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388 (1971), provides a limited cause of action against individual federal government officers acting under color of federal law who acted unconstitutionally.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).  *Bivens*' purpose is to deter individual federal officers, not the agency, from committing constitutional violations.  A *Bivens* action therefore cannot be brought against an entity such as a federal prison, the Bureau of Prisons, or the United States Government.  *Id.*  The claim against BOP will be dismissed.

D.    *Claim against SHP*

The complaint states:

> I was taken to medical where the nurse checked my cuts.  I said I wanted to go to the hospital[.  N]urse said it wasn't that bad.  She checked my injuries.  I had cuts and bruises.  I wasn't seen by medical after that for a check up on my injuries to make sure I was ok. . . . The nurse is from Southern Health Partners.

A private corporation, like Southern Health Partners, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).  Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817 (6th Cir. 1996).  The complaint does not allege that a policy or custom of SHP was the moving force behind any constitutional violations.

Even assuming that Plaintiff alleged a custom or policy, he has not alleged a constitutional violation.  By his own admission, a nurse checked on his cuts and injuries and

determined that he did not need to go to the hospital.  He does not allege that his cuts and bruises

did not heal.  Consequently, the claims against Defendant SHP will likewise be dismissed.

### III. CONCLUSION

For the foregoing reasons, by separate Order, Plaintiff's claims will be dismissed.

Date:    June 26, 2013

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
       Defendants
4414.009

14